**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jessica Hinton, et al., | No.  CV-21-01019-PHX-SPL |
| Plaintiffs, | |
| vs. | **ORDER** |
| Completely Innocent LLC, | |
| Defendant. | |

Before the Court is Plaintiffs Jessica Hinton, Cielo Jean Gibson, Katarina Van Derham, and Claudia Sampedro's (collectively, "Plaintiffs") Motion for Default Judgment Against Defendant Completely Innocent LLC. (Doc. 18). No response to the Motion has been filed. Having reviewed Plaintiffs' Motion, the exhibits attached thereto, and the record in this matter, the Court will grant the Motion.

## I.    BACKGROUND

On June 11, 2021, Plaintiffs filed a Complaint against Defendant Completely Innocent LLC, doing business as Club Luxx ("Defendant" or "Club Luxx"). (Doc. 1). The Complaint seeks damages and injunctive relief for Defendant's alleged misappropriation and unauthorized publication of images of Plaintiffs to promote its nightclub. (*Id.* at 2). The Complaint has seven counts: (1) false association, in violation of § 43 of the Lanham Act, 15 U.S.C. § 1125 *et seq.*; (2) a violation of the common law right of publicity; (3) unfair or deceptive trade practices under A.R.S. Title 44, Chapter 9, *et seq.*; (4) unfair competition; (5) negligence and *respondeat superior*; (6) conversion; and (7) unjust

enrichment. (*Id.* at 12–19). However, Plaintiffs have withdrawn the third through seventh causes of action, leaving only the Lanham Act claim and the right of publicity claim at issue with this Motion. (Doc. 19 at 5 n.1). The Court will therefore *not* consider an entry of default judgment against Defendant as to Plaintiffs' other five claims (unfair or deceptive trade practices, unfair competition, negligence and *respondeat superior*, conversion, and unjust enrichment) and will instead dismiss those Counts in their entirety.

Defendant was served on July 12, 2021 and its deadline to answer or otherwise move against the Complaint was August 3, 2021. (Doc. 8). Defendant has failed to answer or respond to the Complaint or otherwise appear in this action. On August 31, 2021, Plaintiffs filed an Application for Entry of Default against Defendant pursuant to Federal Rule of Civil Procedure ("FRCP") 55(a). (Doc. 10). On September 2, 2021, the Clerk of Court entered default as to Defendant. (Doc. 11). On October 18, 2021, this Court ordered Plaintiffs to show cause by October 22, 2021 why the action should not be dismissed for failure to prosecute. (Doc. 14). On October 22, 2021, Plaintiffs filed a Motion for Default Judgment pursuant to FRCP 55(b)(2) requesting an entry of default judgment and relief. (Doc. 15). This Court denied Plaintiffs' Motion without prejudice and gave Plaintiffs an opportunity to refile the Motion in accordance with the Court's Order. (Doc. 17). On December 16, 2021, Plaintiffs filed a second Motion for Default Judgment—the Motion presently before this Court. (Doc. 18).

Plaintiffs seek $85,000 in actual damages, an order permanently enjoining Defendant from using Plaintiffs' images, and an award to Plaintiffs of all costs and fees incurred in prosecuting this action. (Doc. 19 at 13). To the extent this Court concludes that Plaintiffs' evidence does *not* sufficiently establish the fair market value of Defendant's use of Plaintiffs' images for commercial purposes, Plaintiffs request the Court conduct an inquest into the issue of damages pursuant to FRCP 55(b)(2). (*Id.*). Defendant has not responded to Plaintiffs' Motion.

///

///

2

## II.   **DISCUSSION**

### A. Subject Matter Jurisdiction, Personal Jurisdiction, and Service of Process

When default judgment is sought against a non-appearing party, a court has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter judgment in the first place."). A court has a similar duty with respect to service of process. *See Fishman v. AIG Ins. Co.*, No. CV 07-0589-PHX-RCB, 2007 WL 4248867, at *3 (D. Ariz. Nov. 30, 2007) ("Because defendant has not been properly served, the court lacks jurisdiction to consider plaintiff's motions for default judgment."). These considerations are "critical because '[w]ithout a proper basis for jurisdiction, or in the absence of proper service of process, the district court has *no power to render any judgment* against the defendant's person or property unless the defendant has consented to jurisdiction or waived the lack of process.'" *Id.* (citing *S.E.C. v. Ross*, 504 F.3d 1130, 1138–39 (9th Cir. 2007)).

First, as to subject-matter jurisdiction, the Court may exercise subject-matter jurisdiction because Plaintiffs have stated a claim under the Lanham Act, "which 'confers broad jurisdictional powers upon the courts of the United States' in conjunction with 28 U.S.C. § 1331." *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 872–73 (9th Cir. 2014). "The Lanham Act grants federal subject-matter jurisdiction over 'all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties." *Id.* (citing 15 U.S.C. § 1121(a)). As to Plaintiffs' only remaining state-law claim—violation of the common-law right of publicity—this Court exercises its supplemental jurisdiction because the claim arises out of the same case or controversy, *i.e.*, Defendant's unlawful use of Plaintiffs' images. 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III. . . ."); *see*

*also Kuba v. 1–A Agric. Ass'n*, 387 F.3d 850, 855–56 (9th Cir. 2004) ("Nonfederal claims are part of the same 'case' as federal claims when they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding.").

Next, as to personal jurisdiction, the Court has personal jurisdiction over Defendant because Defendant is a citizen of Arizona and because Defendant was properly served. *See Pennoyer v. Neff*, 95 U.S. 714 (1877) (noting that "every State possesses exclusive jurisdiction and sovereignty over persons and property within its territory."); *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986) (noting that a federal court lacks personal jurisdiction over defendant unless defendant properly served). According to the Complaint, Defendant "is a limited liability company organized and existing pursuant to the laws of the State of Arizona doing business as a night club under the name Club Luxx" in Phoenix, Arizona. (Doc. 1 at 3). As to service of process, Defendant—through its statutory agent, Tony Herrera—was served copies of the summons, complaint, and preliminary order by a certified private process server in person on July 12, 2021. (Doc. 8 at 1). The Court finds that service in this case was proper under the relevant federal and state rules, which authorize service of a limited liability company by in-person delivery of the summons and complaint to an agent of the company who is authorized to receive service. *See* Fed. R. Civ. P. 4(h); Ariz. R. Civ. P. 4.1(i).

With preliminary considerations of jurisdiction and service of process out of the way, the Court turns to whether default judgment is appropriate.

### B. Default Judgment Analysis: *Eitel* Factors

"A defendant's default does not automatically entitle a plaintiff to a default judgment." *Hartford Life & Accident Ins. Co. v. Gomez*, No. CV-13-01144-PHX-BSB, 2013 WL 5327558, at *2 (D. Ariz. Sept. 24, 2013). Instead, once a default has been entered, the district court has discretion to grant a default judgment. *See* Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors the Court may consider include: (1) the possibility of prejudice to the plaintiff; (2) the merits of the claim; (3) the

1  sufficiency of the complaint; (4) the amount of money at stake; (5) the possibility of a
2  dispute concerning material facts; (6) whether default was due to excusable neglect; and
3  (7) the policy favoring a decision on the merits (collectively, the "*Eitel* factors"). *See Eitel*
4  *v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In applying the *Eitel* factors, "the
5  factual allegations of the complaint, except those relating to the amount of damages, will
6  be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

7  <b>i)      The First, Fifth, Sixth, and Seventh <i>Eitel</i> Factors</b>

8  "In cases like this one, in which [Defendant has] not participated in the litigation at
9  all, the first, fifth, sixth, and seventh factors are easily addressed." *Zekelman Indus. Inc. v.*
10 *Marker*, No. CV-19-02109-PHX-DWL, 2020 WL 1495210, at *3 (D. Ariz. Mar. 27, 2020).
11 The first factor—the possibility of prejudice to the plaintiff—weighs in favor of granting
12 default judgment. Defendant has failed to appear in this action, despite being served on
13 July 12, 2021. (Doc. 8). If Plaintiffs' Motion is denied, then Plaintiffs will likely be without
14 other recourse for recovery. *Zekelman*, 2020 WL 1495210, at *3 (citing *PepsiCo, Inc. v.*
15 *Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)).

16 The fifth and sixth factors—the possibility of a dispute concerning material facts
17 and whether default was due to excusable neglect—also weigh in favor of granting default
18 judgment. Given the sufficiency of the Complaint (discussed below) and Defendant's
19 default, the Court finds that no genuine dispute of material facts would preclude granting
20 the Motion. And because Defendant was properly served and has never appeared in this
21 case, the Court finds that it is unlikely that Defendant's failure to appear and the resulting
22 default was the result of excusable neglect. *See id.* at *4 ("Due to Defendants' failure to
23 participate, there is no dispute over material facts (except as to damages) and no indication
24 that default is due to excusable neglect.").

25 The seventh factor—the policy favoring a decision on the merits—generally weighs
26 in favor of denying default judgment because "[c]ases should be decided upon their merits
27 whenever reasonably possible." *Eitel*, 782 F.2d at 1472. But the mere existence of FRCP
28 55(b) "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F.

5

Supp. 2d at 1177. Moreover, Defendant's unexplained absence at this juncture of the case makes a decision on the merits impossible. Thus, the Court is not precluded from entering default judgment against Defendant. *See Emp. Painters' Tr. v. Ethan Enters., Inc.*, 480 F.3d 993, 1000–01 (9th Cir. 2007); *Zekelman*, 2020 WL 1495210, at *4 (citation omitted) ("[T]he default mechanism is necessary to deal with wholly unresponsive parties who could otherwise cause the justice system to grind to a halt. Defendants who appear to be 'blowing off' the complaint should expect neither sympathy nor leniency from the court.").

### ii)      The Second and Third *Eitel* Factors

The second and third factors—the merits of the claims and the sufficiency of the complaint—weigh in favor of granting default judgment. "These two factors are often analyzed together and require courts to consider whether a plaintiff has stated a claim on which it may recover." *Zekelman*, 2020 WL 1495210, at *5 (citation omitted). When the complaint sufficiently states a claim for relief, these factors favor a default judgment. *See Danning v. Lavine*, 572 F.2d 1386, 1388–89 (9th Cir. 1978). "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important." *Zekelman*, 2020 WL 1495210, at *5 (citation omitted).

Here, the Court finds that, taking the allegations in the Complaint as true, Plaintiffs have sufficiently stated claims for relief against Defendant for violations of the Lanham Act and of Arizona's common-law right of publicity. First, under the Lanham Act, a claim for false association has the following elements:

1) the defendant used a word, term, name, symbol, or device (or any combination thereof) or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact;
2) the usage was in commerce, in connection with goods or services;
3) the usage is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person; and
4) the plaintiff has been or is likely to be injured as a result of the usage.

*Id.* at *7–8 (citing 15 U.S.C. § 1125(a)(1)(A)). Here, Plaintiffs have clearly established the elements of a § 1125(a)(1)(A) false association claim. Defendant used images of Plaintiffs on social media posts for Club Luxx without first seeking or obtaining permission from Plaintiffs. (Doc. 1 at 5–8). Defendant's use of Plaintiffs' images on its social media[1] was likely to cause confusion or deceive viewers into believing that Plaintiffs worked at, promoted, endorsed, or were otherwise affiliated with Club Luxx or the events being advertised. Such a representation of Plaintiffs was false, as none had ever been employed at or affiliated with Club Luxx at any time. (*Id.* at 9). The Plaintiffs neither consented to, nor received any remuneration for, Defendant's use of their images. (*Id.* at 8). Finally, Plaintiffs were injured by being denied the fair market value of Defendant's use of their images in promotional, marketing, and advertising media on its websites and social media.

Turning to Plaintiffs' right of publicity claim, the Court first notes that Arizona law recognizes a right of publicity. *See In re Estate of Reynolds*, 235 Ariz. 80, 82–83 (Ct. App. 2014). A right of publicity claim requires the plaintiff to show "(1) the defendant's use of the plaintiff's name or likeness, (2) the appropriation of the plaintiff's name or likeness to the defendant's advantage, (3) lack of consent, and (4) resulting injury." *Lemon v. Harlem Globetrotters Int'l, Inc.*, 437 F. Supp. 2d 1089, 1100 (D. Ariz. 2006). Here, Defendant used Plaintiffs' images on its own social media posts for its own commercial advantage. Plaintiffs never consented to Defendant's use of their images and were injured because they were denied fair market revenue for Defendant's use of their name or likeness. This Court finds that Plaintiffs have sufficiently stated claims—for violations of the Lanham Act and of Arizona's common-law right of publicity—on which they may recover. Therefore, the second and third *Eitel* factors favor default judgment in Plaintiffs' favor.

---

[1] Courts have recognized that online advertisements are "in commerce." *Zekelman*, 2020 WL 1495210, at *8 (citing *TrafficSchool.com, Inc. v. Edriver, Inc.*, 653 F.3d 820, 829 n.3 (9th Cir. 2011)). To the extent that the second element of a false association claim is at issue, this Court finds that the social media posts constituted online advertisements for Club Luxx and that Plaintiffs' images were therefore used "in commerce, in connection with goods or services." *See* 15 U.S.C. § 1125(a)(1)(A).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### iii)   The Fourth *Eitel* Factor

Under the fourth factor, this Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003). "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Zekelman*, 2020 WL 1495210, at *4 (internal quotations omitted) (citation omitted).

Here, Plaintiffs seek $85,000. While $85,000 is no small sum, this Court does not find it to be so substantial or unreasonable as to discourage default judgment. Instead, this Court finds that $85,000 is an appropriate and reasonable damages calculation in this case for several reasons. First, the $85,000 sum represents the combined damages sustained by not one, but *four* individual Plaintiffs. It also represents the combined damages caused by Defendant's use of at least *ten* different images of Plaintiffs over a nearly three-year period—this was not a one-off instance. Second, this Court acknowledges that Plaintiffs reasonably withdrew five of their seven claims, evidencing Plaintiffs' efforts to narrow and simplify their case for purposes of this Motion. Third, and most importantly, Plaintiffs sufficiently support their damages calculation with the sworn declaration of Stephen Chamberlin. (Doc. 19-1 at 2). Mr. Chamberlin is a model and talent agent with extensive experience in the industry and with valuating image uses and model contracts. (*Id.*). The declaration explains the methodology of Mr. Chamberlin's valuations, including the many factors considered when determining the fair market value of each image use. Plaintiffs provided the Court with details of Mr. Chamberlin's damages estimate in the present case, including how it breaks down per Plaintiff and per image used. (*Id.* at 21). All told, given the supporting documentation and the overall reasonableness of Plaintiffs' damages calculation, this Court finds that the fourth factor weighs in favor of default judgment.

All told, this Court finds that the *Eitel* factors weigh in favor of default judgment as to Counts One (Lanham Act false association claim) and Two (right of publicity claim). The Court now turns to the relief sought by Plaintiffs.

///

### C. Relief Sought

As noted above, Plaintiffs seek $85,000 in actual damages, an award of all costs and fees, and injunctive relief permanently enjoining Defendant from using Plaintiffs' images. As a starting point, "'[a] judgment by default shall not be different in kind from . . . that prayed for in the demand for judgment' contained in the complaint." *U.S. v. Dutson*, No. 04-2585-PHX-EHC, 2006 WL 1390816, at *1 (D. Ariz. Mar. 7, 2006) (citing Fed. R. Civ. P. 54(c)). This requirement creates no issue here, however, as the relief sought is consistent with the relief requested in the Complaint. (*See* Doc. 1 at 20).

As to actual damages, this Court finds that $85,000 is appropriate. Under the Lanham Act, the award of monetary remedies in a § 1125(a) false association action includes an award of defendant's profits, any damages sustained by the plaintiff, and the costs of the action. 15 U.S.C. § 1117(a). Here, Plaintiffs seek actual damages based on "the compensation each Plaintiff would and should have received for the use of her images by Defendant." (Doc. 19 at 12–13). As noted above, Plaintiffs offer the sworn declaration of Mr. Chamberlin as evidence that $85,000 represents the combined fair market value of such compensation for all four Plaintiffs. (Doc. 19-1 at 2). Review of the declaration persuades this Court that $85,000 is appropriate. Mr. Chamberlin's extensive experience as a model and talent agent supports the credibility of his fair market valuation. (*Id.* at 2–3, 17–19) Mr. Chamberlin reviewed all relevant and available information—including, among other things, the Complaint, the photographic images of Plaintiffs used by Defendant, the product advertised and media used, each Plaintiff's individual modeling profile, and the nature of Defendant's business. (*Id.* at 4). Mr. Chamberlin explicitly did *not* consider reputational damages, career damages, or what profits Defendant earned from its use of Plaintiffs' images—damages that tend to be more forward-looking or hypothetical in nature. (*Id.* at 6). Instead, Mr. Chamberlin focused exclusively on "the fair market value of Defendant's use of each Plaintiff's image in promotional, marketing and advertising media, on websites, social media and other forum." (*Id.* at 3). In doing so he "employed the same approach, methodology, and process that [he] would typically employ

when determining what to charge a company or other entity that is interest in hiring models [he] represents." (*Id.* at 7). In presenting his final fair market valuation, Mr. Chamberlin breaks down the $85,000 damage total per Plaintiff and per image usage. (*Id.* at 21). The Court finds Mr. Chamberlin's declaration to be thorough, well-founded, and sufficient evidence of the actual damages Plaintiffs suffered in this case. Therefore, this Court finds it appropriate to award them $85,000 in actual damages.

In addition to actual damages, Plaintiffs seek an award of all costs and fees incurred in prosecuting this action. The Lanham Act permits an award of the costs of the action to a plaintiff who establishes a violation under § 1125(a) and an award of reasonable attorneys' fees to the prevailing party in "exceptional cases." *See* 15 U.S.C. § 1117(a). However, an award of attorneys' fees is "never automatic and may be limited by equitable considerations." *Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 711 (9th Cir. 1999) (citation omitted). Here, while such an award may be appropriate, the Court is unaware of the amount of such costs and fees, as Plaintiffs have not yet submitted accounting records, affidavits, or other evidence that indicate and verify the amount of fees and costs incurred. The Court directs Plaintiffs to file any motion for attorneys' fees and/or costs in accordance with FRCP 54(d), LRCiv 54.1, and LRCiv 54.2.

Finally, Plaintiffs seek an order permanently enjoining Defendant from using Plaintiffs' images. The Lanham Act states that a district court "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent . . . a violation under [§ 1125(a)]." 15 U.S.C. § 1116(a); *see also Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1314 (9th Cir. 1997); *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 948 (9th Cir. 2002). Injunctive relief may be appropriate, even in the default judgment setting under FRCP 55. *Dutson*, 2006 WL 1390816, at *1 (citing *S.E.C. v. Worthen*, 98 F.3d 480 (9th Cir. 1996); *Playboy Enters. Int'l, Inc. v. Muller*, 314 F. Supp. 2d 1037, 1040 (D. Nev. 2004)). That said, "[a] plaintiff is not automatically entitled to an injunction simply because it proves its affirmative claims." *PepsiCo*, 238 F. Supp. 2d at 1177 (citing *Pyrodyne Corp. v. Pyrotronics Corp.*,

847 F.2d 1398, 1402 (9th Cir. 1988) ("[T]he grant of injunctive relief is not a ministerial act flowing as a matter of course.")); *see also Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010) ("An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course."). Rather, "[a]ccording to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The four factors a plaintiff must demonstrate are: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.*

Here, Plaintiffs have failed to address any of the four factors required for this Court to impose a permanent injunction. Instead, Plaintiffs' Motion "assumes that injunctive relief should automatically be issued against the Default Defendants for failure to appear and answer the Complaint." *Magna-RX, Inc. v. Holley*, No. CV 05-3545-PHX-EHC, 2008 WL 5068977, at *4 (D. Ariz. Nov. 25, 2008). While Plaintiffs allege that they were denied the fair market value of Defendant's use of their images and that their reputations, character, and careers were harmed—allegations this Court takes as true—they make no attempt to demonstrate that these harms are irreparable[2] absent an injunction, that legal

---

[2] The Court notes that, under the Lanham Act, "[a] plaintiff seeking [a permanent injunction] shall be entitled to a rebuttable *presumption* of irreparable harm upon a finding of a violation identified in this subsection." 15 U.S.C. § 1116(a) (emphasis added).

However, Plaintiffs fail to "address or provide authority as to whether default judgment constitutes 'a finding of a violation.'" *Amazon.com, Inc. v. Expert Tech Rogers Pvt. Ltd.*, No. 20-cv-07405-PJH (JSC), 2021 WL 4461601, at *10 (N.D. Cal. Sept. 22, 2021) (quoting § 1116(a)). Plaintiffs also fail to address "whether the statute's amended language abrogates the Ninth Circuit's prior holding that 'actual irreparable harm must be demonstrated to obtain a permanent injunction [in a Lanham Act case].'" *Id.* (citing *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013)). Therefore, absent any effort by the Plaintiffs to address these issues, this Court will not presume that irreparable harm occurred.

remedies such as monetary damages are inadequate to compensate them, that the balance of hardships is in Plaintiffs' favor, or that the public interest would not be disserved by a permanent injunction. *See id.* ("Factual allegations from Plaintiff's complaint alone, even admitted as true, are not sufficient to grant a permanent injunction. Plaintiff must satisfy the four-factor test in *eBay*."). This Court will not conduct the four-factor analysis *sua sponte* and therefore denies Plaintiffs' request for a permanent injunction.

### III.   <u>CONCLUSION</u>

Having reviewed Plaintiffs' Motion and supporting documents, and having considered the *Eitel* factors in doing so, this Court concludes that the entry of default judgment is appropriate as to Plaintiffs' Lanham Act and right of publicity claims.

Accordingly,

**IT IS ORDERED:**

1. That Plaintiffs' Motion for Default Judgment (Doc. 18) is **granted**. Default judgment, pursuant to FRCP 55(b)(2), is entered in favor of Plaintiffs on Counts One (Lanham Act false association claim) and Two (right of publicity claim).

2. That Counts Three through Seven of the Complaint are **dismissed in their entirety**.

///
///
///
///
///
///
///
///
///
///
///
///

3. That Plaintiffs shall be awarded **$85,000 in actual damages** pursuant to 15 U.S.C. § 1117(a).

4. That Plaintiffs' request for costs and fees is **denied without prejudice**. Plaintiffs shall have the opportunity to timely file an application for attorneys' fees and costs in accordance with FRCP 54(d), LRCiv 54.2, and LRCiv 54.1;

5. That Plaintiffs' request for a permanent injunction is **denied**.

6. That the Clerk of Court shall enter judgment accordingly and terminate this action.

Dated this 7th day of January, 2022.

Honorable Steven P. Logan
United States District Judge